AO 91 Criminal Complaint - Revised 4/20

# UNITED STATES DISTRICT COURT
for the
District of Connecticut

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. |
| Julianne Sanabria-Rivera ) | 3:23-mj- 725 (RAR) |
| ) | |
| ) | |
| ) | |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 18, 2023__ in the county of __Hartford__ in the _____ District of __Connecticut__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846 | Possession of a controlled substance with Intent to Distribute and Conspiracy to possess with intent to distribute a controlled substance |

This criminal complaint is based on these facts:

Please see attached affidavit of DEA TFO Jeffrey Poulin as incorporated herein.

☑ Continued on the attached sheet.

_____
JEFFREY POULIN (Affiliate)
Digitally signed by JEFFREY POULIN (Affiliate)
Date: 2023.08.18 17:15:50 -04'00'
*Complainant's signature*

TFO Jeffrey Poulin, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (specify reliable electronic means).

Date: 08/18/2023

Robert A. Richardson
Digitally signed by Robert A. Richardson
Date: 2023.08.18 17:40:57 -04'00'
*Judge's signature*

City and state: Hartford, Connecticut

Hon. Robert A. Richardson, U.S. Magistrate Judge
*Printed name and title*

3:23MJ725 (TOF)

| | | |
|---|---|---|
| STATE OF CONNECTICUT | : | ss: CITY OF HARTFORD |
| | : | |
| COUNTY OF HARTFORD | : | |

## MASTER AFFIDAVIT

I, Jeffrey Poulin, being duly sworn, depose and state the following:

### INTRODUCTION

1. I have been a member of the Wethersfield, Connecticut, Police Department since 2003. From October 2011 to the present, I have been assigned to the DEA's Hartford Resident Office ("HRO") as a TFO.

2. During the course of my career, I have participated in numerous criminal investigations, including many investigations into suspected narcotics trafficking, money laundering and violations of firearms laws. My participation in the investigations has included: coordinating controlled purchases of narcotics using confidential informants, cooperating witnesses, and undercover law enforcement officers; coordinating the execution of search and arrest warrants, many of which have resulted in the seizure of narcotics, firearms, drug paraphernalia used in narcotics distribution, and narcotics proceeds; conducting electronic and physical surveillance, including the conduct of wiretap investigations; analyzing records related to narcotics trafficking; testifying in court proceedings; and interviewing informants and cooperating witnesses, many of whom are involved in drug distribution activity, and other members of law enforcement regarding the manner in which narcotics traffickers obtain, finance, store, manufacture, transport, and distribute controlled substances.

3. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States

Code, Section 2516, offenses set forth in Title 21, United States Code and other federal felony offenses.

## REQUESTED WARRANT & CRIMINAL COMPLAINT

4. This affidavit is submitted in support of a criminal complaint for Julianne A. SANABRIA-RIVERA on charges of possession with intent to distribute and conspiracy to possess with intent to distribute a controlled substance, namely cocaine, in violation of 21 U.S.C. § 841(a)(1), 841 (b)(1)(C) and 846.

5. I am one of the case agents who directed this investigation. As a case agent, I am intimately familiar with the facts and circumstances of this investigation. I was personally involved in the investigative activities undertaken during this investigation. The facts set forth herein are based on, *inter alia*, my personal knowledge and participation in this investigation, information provided by special agents and task force officers of the DEA, information provided by a source of information and other information which I have reviewed and determined to be accurate and reliable. Because this affidavit is submitted for a limited purpose, I have not included each and every fact I know about this investigation. I have set forth only those facts necessary to establish probable cause for the requested criminal complaints and arrest warrants.

## SUMMARY OF THE INVESTIGATION

6. On August 18, 2023, DEA investigators from the Hartford Resident Office (HRO) were contacted by investigators from the DEA Puerto Rico regarding an individual that was transporting what was suspected to be approximately six kilograms of narcotics into Connecticut.

7. Specifically, DEA Puerto Rico investigators received information from a source of information, herein SOI that a female, identified as Julianna SANABRIA-RIVERA had boarded a Southwest Airlines flight that departed at approximately 5:25 a.m. Southwest Flight

2

information revealed that SANABRIA-RIVERA was ultimately destined for Hartford, CT. This SOI also provided investigators with an X-ray machine image from San Juan Airport showing that SANABRIA-RIVERA's checked luggage contained approximately six brick shaped objects that where each consistent in size and shape with a kilogram of narcotics. Information previously provided by this SOI has been used by DEA Puerto Rico investigators to make arrests and has been found to be accurate, true and reliable.

8. With this information DEA HRO investigators were able to confirm that SANABRIA-RIVERA was due to arrive in Hartford, CT at approximately 2:09 p.m. Additionally, HRO investigators were able to obtain a photograph of SANBRIA-RIVERA's luggage, which included a name tag bearing her name. At approximately 2:09 p.m. DEA HRO investigators were able to identify SANBRIA-RIVERA as she disembarked in Hartford, CT. She was then followed by investigators to the baggage claim.

9. Once in the baggage claim SANBRIA-RIVERA was observed removing previously identified luggage from the luggage carousel. Upon removing the luggage SANABRIA-RIVERA was observed comparing the information on the luggage tag to piece of paper that she removed from her pocket. Upon making her way to the exit doors, DEA HRO investigators stopped her.

10. After identifying ourselves as law enforcement officers I asked SANABRIA-RIVERA to step to the side so that we could speak to her and advised her that we believed that she was transporting narcotics in her luggage. I next verbally advised SANABRIA-RIVERA of her Miranda warnings and she indicated verbally that she understood and that she would speak to investigators.

11. I asked SANABRIA-RIVERA where she was traveling to and she indicated that she was traveling from Puerto Rico to the Bronx in New York. SANBRIA-RIVERA was asked about her luggage and she indicated that the luggage belonged to her but that she did not pack it and stated that a friend of her packed it for her.

12. I next asked SANABRIA-RIVERA for consent to search the bag and she agreed and signed a DEA consent to search form authorizing the search. Prior to opening the luggage SANABRIA-RIVERA provided investigators with a set of keys that opened the small pad lock that secured the luggage. The luggage was next search and secreted amongst clothing was a large package wrapped in black paper. Upon cutting into the paper investigators observed six individually wrapped rectangular packages similar in size and shape to kilogram quantities of narcotics. On scene a DEA investigator subjected a portion of white powder to a chemical field test and observed a positive reaction for the presumptive presence of cocaine, in the portion tested.

13. SANABRIA-RIVERA was next questioned about the narcotics. SANABRIA-RIVERA indicated, in sum, that she obtained the sealed suitcase early this morning at a residence in Carolina, Puerto Rico. She advised that she obtained the luggage from a male and female, but could not remember their names. SANABRIA-RIVERA advised that she believed the luggage contained currency. She advised that she was to deliver the luggage to an address in Bronx, New York and that she would be paid three thousand dollars when she returned to Puerto Rico in the coming days.

## CONCLUSION

14. Based on the aforementioned information, there is probable cause to believe and I do believe that Julianne SANABRIA-RIVERA possessed with intent to distribute a controlled

5

substance, namely cocaine, in violation of 21 U.S.C. § 841(a)(1) and also conspired to possess with intent to distribute cocaine, in violation of 841 (b) (1)(C) and 846. Accordingly, I request that a criminal complaint be issued for SANABRIA-RIVERA.

JEFFREY POULIN (Affiliate)
Digitally signed by JEFFREY POULIN (Affiliate)
Date: 2023.08.18 17:24:59 -04'00'

Jeffrey Poulin
Task Force Officer, DEA

The truth of the foregoing affidavit has been attested to me by DEA Task Force Officer Jeffrey Poulin over the telephone on August 18, 2023.

Robert A. Richardson
Digitally signed by Robert A. Richardson
Date: 2023.08.18 17:40:12 -04'00'

HON. ROBERT A. RICHARDSON
UNITED STATES MAGISTRATE JUDGE